UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TRACEY A. HARDY,

        Petitioner,

        v.                         CAUSE NO. 3:18-CV-640-JD-MGG

WARDEN,

        Respondent.

## OPINION AND ORDER

Tracey A. Hardy, a prisoner without a lawyer, filed a habeas corpus petition challenging his 2015 conviction in Elkhart County for dealing in cocaine. (ECF 2.) For the reasons stated below, the petition is denied.

I.     BACKGROUND

In deciding the petition, the court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Hardy's burden to rebut this presumption with clear and convincing evidence. *Id.* On direct appeal, the Indiana Court of Appeals set forth the facts underlying Hardy's conviction as follows:

> In 2012, the Elkhart County Interdiction and Covert Enforcement Unit (ICE Unit)—a joint drug task force comprised of various law enforcement agencies within Elkhart County, Indiana—began compensating a confidential informant, Cooperating Source 12009 (CS–12009), to provide information about individuals in Elkhart County whom the Source believed to be engaged in dealing drugs. Part of CS–12009's role as a confidential informant entailed participating in controlled drug purchases under the direction and supervision of his ICE Unit handlers. At some point, CS–12009 informed the ICE Unit that Hardy was dealing cocaine.

On the afternoon of August 14, 2013, CS–12009 met with several ICE Unit officers, including Detective Andrew Whitmyer (Detective Whitmyer) and Detective Brian Schroth (Detective Schroth), for the purpose of arranging and carrying out a controlled drug purchase from Hardy. In the presence of the officers, CS–12009 placed a phone call to Hardy and set up the transaction. The officers searched CS–12009 to ensure that he was not in possession of any weapons, drugs, or large sums of money and equipped him with a concealed audio recording and transmitting device. The officers also provided CS–12009 with $80.00 in cash, which the officers had previously photocopied in order to keep track of the currency's serial numbers. Then, as the police maintained visual and audio surveillance, CS–12009 walked to a liquor store where he had agreed to meet with Hardy. A short time later, Hardy pulled up in a white Chevrolet Monte Carlo, and CS–12009 climbed into the passenger seat. The officers discretely followed the Monte Carlo as it traveled several blocks to a house located at 905 West Marion Street in Elkhart. There, CS–12009 waited as Hardy went inside the house, "got the drugs and brought them back out." Detective Schroth followed as Hardy drove CS–12009 back to the liquor store. Once Hardy pulled away, CS–12009 reconvened with the officers and was again subjected to a thorough search. In addition to returning $20.00 of the buy money to Detective Whitmyer, CS–12009 handed Detective Schroth three plastic baggies appearing to contain crack cocaine, the total weight of which was .72 grams. The substance in one of the baggies tested positive for .22 grams of cocaine.

On September 9, 2013, CS–12009 arranged a second controlled purchase involving Hardy. Once again, CS–12009 met with several ICE Unit officers, at which time he was searched, outfitted with a recording and transmitting device, and provided with $40.00 in buy money that had previously been photocopied. This time, Detective Whitmyer, Detective Schroth, and two other ICE Unit officers monitored CS–12009 as he walked to 318 West Jefferson Street in Elkhart and went inside. A short time later, the officers observed as Hardy's white Monte Carlo pulled up to the house and Hardy went inside. A few minutes later, CS–12009 emerged and walked back to the officers' meeting location. After being searched, CS–12009 turned over two plastic baggies that appeared to contain crack cocaine and which had a total weight of .38 grams. The substance in one of the baggies tested positive for .17 grams of cocaine. On September 11, 2013, CS–12009 arranged for a final controlled cocaine purchase from Hardy. As before, the ICE Unit officers thoroughly searched CS–12009, equipped him with a recording and transmitting device, and supplied $90.00 in photocopied cash to complete the purchase. With the officers watching, CS–12009 walked down the block to 318 West

Jefferson—where the white Monte Carlo was already parked out front—and went inside for a few minutes. Upon his return to the ICE Unit meeting location, CS–12009 was searched, and he tendered four plastic baggies to the officers, which appeared to contain crack cocaine and weighed a total of .67 grams. The substance in one of the baggies tested positive for .13 grams of cocaine.

For several hours following the third controlled drug purchase, ICE Unit officers maintained surveillance of 318 West Jefferson Street and Hardy's Monte Carlo. At this point, Detective Whitmyer and Detective Schroth agreed that they had probable cause to arrest Hardy for dealing in cocaine, but they discussed the possibility that Hardy might be willing to provide information about his supplier or act as a confidential informant. When Hardy finally emerged and drove away from 318 West Jefferson, a uniformed patrol officer with the Elkhart Police Department initiated a traffic stop. Detective Whitmyer and Detective Schroth—who had followed the patrol officer as he initiated the stop—removed Hardy from his vehicle, informed him that he was under arrest, placed him in handcuffs, conducted a cursory pat-down search for weapons, and transferred him to an unmarked police vehicle. Detective Whitmyer and Detective Schroth drove Hardy to a nearby park while other officers relocated Hardy's recognizable vehicle to a more inconspicuous location in order to avoid alerting any neighbors to the fact that Hardy was talking to the police.

Once at the park, the officers conducted a more thorough search of Hardy's person, seizing $975.00 from his pant pockets. The serial numbers on $55.00 of the recovered bills matched the photocopied money that CS–12009 had used to purchase cocaine earlier that day. Based on their conversation with Hardy, Detective Whitmyer and Detective Schroth decided to release Hardy rather than taking him to jail to be booked. Approximately one month later, on October 10, 2013, the State filed an Information, charging Hardy with Counts I and II, dealing in cocaine within 1,000 feet of a public park, Class A felonies, I.C. § 35–48–4–1(a)(1)(C),(b)(3)(B)(ii) (2013); and Count III, dealing in cocaine, a Class B felony, I.C. § 35–48–4–1(a)(1)(C) (2013).

On April 20–21, 2015, the trial court conducted a jury trial. Before any evidence was presented, Hardy moved to suppress the buy money that was seized from his pockets following the September 11, 2013 controlled drug purchase, arguing that the warrantless search was unlawful. After a hearing outside the jury's presence, the trial court denied Hardy's suppression motion. At the close of the evidence, the jury

returned a guilty verdict on all Counts, and the trial court entered a judgment of conviction on the same. On May 14, 2015, the trial court held a sentencing hearing. The trial court imposed a sentence of forty-one years each on Counts I and II and a sentence of ten years on Count III—all to be served concurrently for an aggregate sentence of forty-one years, fully executed in the Indiana Department of Correction (DOC).

*Hardy v. State*, 42 N.E.3d 586 (Table), 2015 WL 7710249, at *1-3  (Ind. Ct. App. 2015)

(headnotes, footnotes, and internal citations omitted).

On direct appeal, Hardy, represented by appointed counsel, raised the following claims: (1) the trial court abused its discretion in admitting evidence, namely, the controlled-buy money, which was obtained during the course of an improper search; (2) his sentence violated the Proportionality Clause of the Indiana Constitution; and (3) his sentence was inappropriately long in light of Indiana Appellate Rule 7(B). *Id.* at *1, *8. The Indiana Court of Appeals rejected these arguments and affirmed Hardy's conviction and sentence. *Id.* at *4-8. Hardy, represented by the same appointed counsel, sought transfer to the Indiana Supreme Court raising only claim two based on the Proportionality Clause of the Indiana Constitution. (ECF 18-6.) His petition was denied. (ECF 18-2 at 6.)

Thereafter, Hardy filed a *pro se* petition for state post-conviction relief. *Hardy v. State*, 102 N.E.3d 354 (Table), 2018 WL 2407598 (Ind. Ct. App. May 29, 2018). The post-conviction court granted Hardy's request for counsel and appointed the public defender to represent him in that proceeding. *Id.* at *2. However, the public defender was later granted leave to withdraw. *Id.* Hardy then amended his petition twice. *Id.*

4

Following an evidentiary hearing at which Hardy's trial counsel testified, the post-conviction court denied the petition. *Id.* at *3.

In his *pro se* appeal, Hardy filed a 21-page appellate brief that raised a variety of issues the Indiana Court of Appeals found "too poorly developed or expressed to be understood." *Id.* at *5. The court could only discern three claims of ineffective assistance of trial counsel. *Id.* Specifically, the court understood Hardy to be claiming: (1) that trial counsel was ineffective because he did not request a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), which in Hardy's view would have led to suppression of the controlled-buy money; (2) that trial counsel failed to conduct a proper pretrial investigation, which would have revealed that Hardy "rented one of the apartments on the second floor" of a multi-unit building, and that the informant did not know Hardy's last name; and (3) that trial counsel failed to advance certain arguments at trial regarding the police officers' surveillance of the confidential informant. *Id*. at *5-*7.

The court rejected each of these arguments. The court held that, to the extent Hardy was attempting to argue that probable cause was lacking for his arrest, such an argument was barred by *res judicata* because he had unsuccessfully raised this claim on direct appeal.[1] *Id.* *6 n.1. The court further held that Hardy had not established ineffective assistance of counsel. *Id.* The court found that an argument under *Franks* would have been unavailing, because *Franks* pertains to warrants, and the evidence

---

[1] Specifically, the court concluded on direct appeal that the police had probable cause to arrest Hardy based on what they had witnessed during their surveillance, and that the search incident to arrest was sufficiently contemporaneous and otherwise proper under the Fourth Amendment. *Hardy*, 2015 WL 7710248, at *3-*4.

5

Hardy wanted to suppress—the controlled-buy money—had been discovered during a search incident to arrest rather than pursuant to a warrant. *Id.* at *6. Regarding counsel's failure to investigate, the court concluded that Hardy failed to provide a factual basis for his arguments or advance a cogent argument as to why counsel's investigation was inadequate. *Id.* *7. Regarding the failure to raise certain arguments at trial about the officers' surveillance of the confidential informant, the court found little factual support in the record for Hardy's arguments. *Id.* The court noted that trial counsel "thoroughly cross-examined" the officers and highlighted the fact that they had not actually witnessed the controlled buys and that alternative sources of the drugs existed. *Id.* Counsel had also highlighted that the confidential information was being paid for his information and that he had a financial incentive to accuse Hardy. *Id.* The court therefore concluded that Hardy had not established ineffective assistance of counsel and affirmed the denial of post-conviction relief. *Id.* Hardy filed a petition to transfer raising these same claims. (ECF 18-12.) The petition was denied. (ECF 18-8 at 9.)

Thereafter, Hardy sought federal habeas relief. His petition and supporting memorandum are difficult to parse, but the court discerns the following claims: (1) his arrest and the search incident to arrest were unlawful under the Fourth Amendment; (2) he was not permitted to "inspect the record" in the post-conviction proceeding in violation of state procedural rules; (3) his conviction violated Indiana Trial Rule 9(B) regarding allegations of fraud; (4) the prosecutor committed misconduct under the Indiana Rules of Professional Conduct; and (5) his trial counsel was ineffective on various grounds. (ECF 2 at 3-11.)

II.     ANALYSIS

Hardy's petition is governed by the provisions of the Anti-Terrorism and

Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336

(1997). AEDPA allows a district court to issue a writ of habeas corpus on behalf of a

person in custody pursuant to a state court judgment "only on the ground that he is in

custody in violation of the Constitution or laws or treaties of the United States." 28

U.S.C. § 2254(a). The court can grant an application for habeas relief if it meets the

stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim—
>     (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>     (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

This standard is "difficult to meet" and "highly deferential." *Hoglund v. Neal*, 959

F.3d 819, 832 (7th Cir. 2020) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)). "It is

not enough for a petitioner to show the state court's application of federal law was

incorrect; rather, he must show the application was unreasonable, which is a

'substantially higher threshold.'" *Hoglund*, 959 F.3d at 832 (quoting *Schriro v. Landrigan*,

550 U.S. 465, 473 (2007)). "A petitioner must show that the state court's ruling on the

claim being presented in federal court was so lacking in justification that there was an

error well understood and comprehended in existing law beyond any possibility for

fair-minded disagreement." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). A state court's decision can be a reasonable application of Supreme Court precedent even if this court would have reached a different conclusion. *Id.*

Before considering the merits of a habeas petition, the court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Hoglund*, 959 F.3d at 832. The exhaustion requirement is premised on a recognition that the state courts must be given the first opportunity to address and correct violations of their prisoner's federal rights. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claims in one complete round of state review. *Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004); *Boerckel*, 526 U.S. at 845. This includes seeking discretionary review in the state court of last resort. *Boerckel*, 526 U.S. at 848.

The companion procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits of a claim when: (1) the claim was presented to the state courts and was denied on the basis of an adequate and independent state procedural ground; or (2) the claim was not presented to the state courts and it is clear those courts would now find the claim procedurally barred under state law. *Davila*, 137 S. Ct. at 2064; *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). In other words, when a habeas petitioner fails to fairly present his claim to the state courts and the opportunity to raise that claim has now passed, the claim is procedurally defaulted. *Boerckel*, 526 U.S. at 853-54. With these principles in mind, the court turns to the petition.

A.  Claims One Through Four

The respondent argues that claims one through four are procedurally defaulted because Hardy did not present them in one complete round of state review. (ECF 18 at 7.) Upon review, the court agrees. Hardy raised claim one with the Indiana Court of Appeals on direct appeal, but he did not include the claim in his petition to transfer. (*See* ECF 18-6.) He did not raise claims two, three, or four at either level of direct appeal. To the extent he raised claims two, three, or four with the Indiana Court of Appeals in the post-conviction proceedings, the court found the claims were not adequately developed in accordance with Indiana Appellate Rule 46(A)(8)(a) and were thus waived. *Hardy*, 2018 WL 2407598, at *5; *see also Cherry v. State*, 57 N.E.3d 867, 877 (Ind. Ct. App. 2016) (finding waiver where appellant failed to comply with Rule 46(A)(8)(a)); *Casady v. State*, 934 N.E.2d 1181, 1191 (Ind. Ct. App. 2010) (same). A finding of waiver constitutes an adequate and independent state procedural ground that bars federal habeas review. *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009); *see also Bobo v. Kolb*, 969 F.2d 391, 399 (7th Cir. 1992) ("A federal court reviewing a habeas petition is required to respect a state court's finding, under state law, of waiver or procedural default."). Therefore, these four claims are procedurally defaulted.

A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice. *Davila*, 137 S. Ct. at 2064. Cause sufficient to excuse a procedural default is defined as "some objective factor external to the defense" which prevented the petitioner from pursuing his constitutional claim in state court. *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488

9

(1986)). A habeas petitioner can also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006).

In his traverse, Hardy appears to argue that his procedural default of claim one should be excused because his attorney acted improperly in omitting this claim from his petition to transfer. (ECF 21 at 9.) Attorney error rising to the level of ineffective assistance of counsel can amount to cause sufficient to excuse a procedural default. *Davila*, 137 S. Ct. at 2065. However, the exhaustion doctrine requires that an ineffective assistance claim be presented to the state court as an independent claim before it may be used to establish cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *Murray*, 477 U.S. at 490. If the ineffective assistance claim being used to excuse a procedural default was itself not properly raised in state court, the petitioner will be "fully defaulted" with respect to that claim. *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002). Here, Hardy presented numerous grounds of ineffective assistance of *trial* counsel in the post-conviction proceedings, but he did not present any claim of ineffective assistance by *appellate* counsel. *See Hardy*, 2018 WL 2407598, at *5-*7. Accordingly, he has not provided cause to excuse his default of claim one.

As to claims two through four, he suggests that the waiver occurred because of ineffective assistance by post-conviction counsel. (ECF 21 at 9.) Errors by post-conviction counsel generally do not provide cause to excuse a procedural default. *See Davila*, 137 S. Ct. at 2065. Furthermore, the record reflects that post-conviction counsel withdrew at an early stage in the post-conviction proceedings, and the waiver at issue

occurred on appeal, at a time when Hardy was representing himself. His own failings in

connection with raising these arguments could not be considered a factor "external to

the defense" that would excuse his default. *See Crutchfield v. Dennison*, 910 F.3d 968, 973

(7th Cir. 2018) (observing that a factor is "external to the defense" only if it "cannot

fairly be attributed to" the defendant). Therefore, these four claims are procedurally

barred.

      Assuming the claims were not procedurally barred, they would not entitle Hardy

to federal habeas relief in any event. Claim one rests on a Fourth Amendment violation,

and the United States Supreme Court has held that "where the State has provided an

opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner

may not be granted federal habeas corpus relief on the ground that evidence obtained

in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428

U.S. 465, 494 (1976). That is because the exclusionary rule, which requires the

suppression of evidence obtained in violation of the Fourth Amendment, is not a

"personal constitutional right" of the accused; rather, "it is a judicially created means of

effectuating the rights secured by the Fourth Amendment." *Brock v. United States*, 573

F.3d 497, 499 (7th Cir. 2009) (internal citation and quotation marks omitted). The rule

was intended to deter violations of the Fourth Amendment by "removing the incentive

to disregard it," but it has attendant costs, since it "deflects the truth-finding process

and often frees the guilty." *Stone*, 428 U.S. at 484, 490. Thus, the rule "has been restricted

to those areas where its remedial objectives are thought most efficaciously served." *Id.*

at 486-87. The Supreme Court has determined that in habeas proceedings the

"contribution of the exclusionary rule, if any, to the effectuation of the Fourth

Amendment is minimal, and the substantial societal costs of application of the rule

persist with special force." *Id*. at 495.

Therefore, federal habeas courts are barred from reviewing Fourth Amendment

claims that were fully and fairly litigated in state court. *Id*.; *Monroe v. Davis*, 712 F.3d

1106, 1114 (7th Cir. 2013). A habeas petitioner had a full and fair opportunity to litigate

a Fourth Amendment claim if: "(1) he clearly apprised the state court of his Fourth

Amendment claim along with the factual basis for that claim; and (2) the state court

carefully and thoroughly analyzed the facts, and (3) the court applied the proper

constitutional case law to those facts." *Miranda v. Leibach*, 394 F.3d 984, 997 (7th Cir.

2005). A federal habeas court's task is not to "second-guess the state court on the merits

of the petitioner's claim, but rather to assure ourselves that the state court heard the

claim, looked to the right body of case law, and rendered an intellectually honest

decision." *Monroe*, 712 F.3d at 1114.

Here, Hardy does not respond to, or even acknowledge, the respondent's

argument that his claim is barred under *Stone*, and instead continues to press the merits

of his Fourth Amendment claim. (ECF 21 at 12-39.) The record reflects that he received a

full and fair opportunity to litigate his Fourth Amendment claim in state court. As

recounted above, he raised this claim at trial and on direct appeal through counsel. In

rejecting the argument on direct appeal, the Indiana Appellate Court thoroughly

analyzed the facts and looked to applicable Fourth Amendment principles to resolve

the claim. *See Hardy*, 2015 WL 7710249, at *3-*5. Although Hardy would like this court

to consider the evidence and reach a different conclusion, that is "a path that *Stone* closes." *Hayes v. Battaglia*, 403 F.3d 935, 939 (7th Cir. 2005).

As for claims two, three, and four, these claims are each premised on a violation of state law. (ECF 2 at 5-9.) Errors of state law are not cognizable on federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Accordingly, none of these claims would entitle Hardy to federal habeas relief even if the court could reach them on the merits.

## B.   Claim Five

In claim five, Hardy asserts various grounds of ineffective assistance of counsel. (ECF 2 at 10-11.) Each ground of ineffective assistance is considered separate for exhaustion purposes. *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007). The respondent argues, and the court agrees, that the only grounds Hardy properly exhausted in state court were the three claims identified by the Indiana Court of Appeals on post-conviction review. *See Hardy*, 2018 WL 2407598, at *5-*7. The other grounds were found to be waived as inadequately developed. *Id.* at *5. As outlined above, waiver constitutes an adequate and independent state ground barring federal habeas review on the merits. *Sturgeon*, 552 F.3d at 611; *Bobo*, 969 F.2d at 399. Hardy does not appear to acknowledge his default or provide any basis for excusing it. To the extent he is arguing that errors by post-conviction counsel should excuse the default (ECF 21 at 9), this argument is unavailing for the reasons stated above.

As for the grounds of ineffective assistance of counsel that were properly exhausted, Hardy claims that his trial counsel was deficient for three reasons: (1) he did

not request a *Franks* hearing to suppress the controlled-buy money; (2) he failed to conduct a proper pretrial investigation, which would have revealed other potential sources of the drugs; and (3) he failed to advance certain arguments at trial to challenge the police officers' surveillance of the confidential informant. (ECF 2 at 10-11.)

Under the Sixth Amendment, a criminal defendant is entitled to "effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." *Bobby v. Van Hook*, 558 U.S. 4, 16 (2009). To prevail on such a claim, the petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). On the deficiency prong, the central question is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices[.]" *Richter*, 562 U.S. at 105. The court's review of counsel's performance is deferential, and there is an added layer of deference when the claim is raised in a habeas proceeding: "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Furthermore, the court should "evaluate [counsel's] performance as a whole rather than focus on a single failing or oversight," *Ebert v. Gaetz*, 610 F.3d 404, 412 (7th Cir. 2010), and must respect its "limited role in determining whether there was manifest deficiency in light of information then available to counsel." *Premo v. Moore*, 562 U.S. 115, 125 (2011). An attorney's representation "need not be perfect, indeed not even very

14

good, to be constitutionally adequate." *Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017). Rather, "[i]t must merely be reasonably competent." *Id.* If the defendant wanted counsel to raise an argument that itself had no merit, an ineffective assistance claim cannot succeed, because "[f]ailure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996).

Under the Sixth Amendment, counsel has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S at 690-91. The decision whether to investigate must be assessed for reasonableness based on the circumstances known at the time, "applying a heavy measure of deference to counsel's judgments." *Id.* at 691. Counsel is also given significant discretion in selecting a trial strategy based on the information known at the time. *Yu Tian Li v. United States*, 648 F.3d 524, 528 (7th Cir. 2011).

On the prejudice prong, the petitioner must show there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 693. In assessing prejudice under *Strickland*, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel had acted differently." *Richter*, 562 U.S. at 111. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 112.

Here, the record reflects that Hardy was represented by Peter Todd, a public defender, at trial. Counsel testified at the post-conviction hearing, and by that time, he had been promoted to Chief Public Defender for Elkhart County.[2] *Hardy*, 2018 WL 2407598, at *3. The record further reflects that Todd graduated from law school in 2000, approximately 15 years prior to Hardy's trial; that he had practiced criminal law for more than a decade as both a deputy prosecuting attorney and a public defender; that he had conducted "dozens" of criminal jury trials, including both defending and prosecuting drug-dealing cases; that he was familiar with controlled buys and how police utilize confidential informants; that he was familiar with the criminal discovery procedures in Elkhart County; and that he was provided with and reviewed discovery in Hardy's case. *Id.* Additionally, Todd testified that he had "explored all appropriate defenses while representing Hardy." *Id.*

In rejecting Hardy's claim of ineffective assistance on post-conviction review, the trial court observed:

> Contrary to Hardy's allegations, trial counsel did argue some of the issues raised by Hardy. The Court sat through and presided over the entire jury trial and witnessed trial counsel choose a jury of Hardy's peers, cross examine witnesses, argue objections, argue the motion to suppress, and argue the evidence in his closing argument.

*Hardy*, 2018 WL 2407598, at *3 (internal alterations omitted). In considering this claim on appeal, the Indiana Court of Appeals cited to *Strickland* and applied well-settled Sixth Amendment principles in analyzing Hardy's claim. *Id.* at *5. As to Hardy's claim that

---

[2] The court notes that Hardy did not testify at the post-conviction hearing or call any witnesses besides Todd. (*See* ECF 19-7.)

his counsel should have requested a *Franks* hearing to try to suppress the controlled-buy money, the Indiana Court of Appeals accurately recognized that under *Franks*, if the defendant makes a "substantial showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," a hearing must be held. *Id.* at *6 (quoting *Franks*, 438 U.S. at 155-56)). If, at the hearing, the defendant establishes perjury or reckless disregard of the facts, and the rest of the affidavit is insufficient to establish probable cause, the search warrant must be voided and any evidence obtained from its fruits excluded. *Id.* The court found this principle inapplicable to Hardy, however, because the controlled-buy money at issue was obtained during a search incident to arrest, not as a result of a search warrant. *Id.* The court therefore found that any argument by trial counsel based on *Franks* would have been unavailing. *Id.*

Based on the record, the court cannot conclude that the state court's resolution of this claim was objectively unreasonable. Contrary to Hardy's arguments, the record reflects that Todd was well aware of potential weaknesses in the state's case regarding Hardy's initial arrest, the surveillance evidence, and the use of the confidential informant. Prior to trial, Hardy's counsel orally moved to suppress the controlled-buy money seized from Hardy when he was temporarily arrested on September 11, 2013, as well as statements that he made to the police after that arrest. *Hardy*, 2015 WL 7710249, at *2-*3. His arguments were partly successful: The court suppressed Hardy's statements because he did not receive adequate *Miranda* warnings. *Id.* at *3 n.2. Hardy's counsel did attempt to have the controlled-buy money suppressed on other grounds,

but there is no indication that a *Franks* argument raised by counsel would have been availing for the reasons articulated by the Indiana Court of Appeals.[3] As stated above, the "[f]ailure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." *Stone*, 86 F.3d at 717. Based on the record, the state court's rejection of this claim was not an unreasonable application of *Strickland*.

Hardy also claims that counsel failed to conduct a proper pretrial investigation regarding the controlled buys and, relatedly, that counsel failed to adequately challenge the evidence pertaining to the controlled buys at trial. The Indiana Court of Appeals rejected these claims, finding that Hardy failed to provide a factual basis for his allegations or adequately explain how counsel's failings prejudiced him. Hardy makes similarly vague arguments here, and it is not entirely clear what more he thinks counsel could have done. As best as can be discerned, he believes counsel did not adequately investigate whether the officers actually witnessed any of the drug buys, or whether other people lived in the apartment building at 318 W. Jefferson, which the officers saw the confidential informant enter. As stated by the Indiana Court of Appeals, however, these assertions are contradicted by the record, which reflects that counsel was well aware of shortcomings in the state's evidence. The record reflects that counsel made an opening statement and closing argument poking holes in the state's surveillance

---

[3] As Hardy points out in one of his filings (*see* ECF 42-1), a search warrant was later issued for Hardy's cell phone. Hardy seems to believe this warrant is what led to the discovery of the controlled-buy money, but this fact is contradicted by the record. Indeed, the warrant he attaches was issued two years after the controlled-buy money was found on his person. Nor does he present any basis on which the cell phone might have been suppressed or identify any falsehoods in the affidavit that his counsel might have explored.

evidence; cross-examined the officers on these issues; elicited testimony that the buildings where the transactions occurred had multiple units; and emphasized weaknesses in the confidential informant's account, including his incentive to inculpate Hardy. (ECF 19-3 at 31-33, 42-44, 155-61, 174-76, 201-32; ECF 19-4 at 264, 302.) The fact that his strategy was ultimately unsuccessful appears due, not to any failing by counsel, but to the strength of the evidence against Hardy. For these reasons, the Indiana Court of Appeals' resolution of these claims was not an unreasonable application of *Strickland*.

C.   Pending Motions

As final matter, Hardy has filed certain motions with the court. (ECF 37, 38, 40.) In his first motion, he seeks a variety of discovery materials pursuant to the "Federal Rules of Criminal Procedure." (ECF 37.) Those rules do not apply to this federal habeas proceeding challenging a state conviction, however, nor is there a basis for Hardy to be conducting pretrial discovery at this stage. He relatedly asks that this court conduct a *Franks* hearing (ECF 38), but this misunderstands the role of this court on habeas review. To the extent he is requesting an evidentiary hearing on his federal habeas petition, AEDPA permits the district court to hold an evidentiary hearing to expand the record in habeas cases only in very narrow circumstances. *See* 28 U.S.C. § 2254(e)(2). A habeas petitioner is entitled to a hearing to develop his claims only when his factual allegations "if true, would entitle [him] to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary

hearing." *Id.* For the reasons fully articulated above, that is the case here. These two motions will be denied.

Hardy's third motion is labeled, "Motion for Federal Rule 60(b)(d)(1) Relief from Judgment or Order." (ECF 40.) The motion is difficult to follow, but Hardy appears to request that this court vacate the trial court's ruling on his motion to suppress pursuant to Federal Rule of Civil Procedure 60(b). The court has no authority to grant such relief. Instead, the court can only upset Hardy's state conviction if he meets the stringent requirements of AEDPA. For the reasons fully outlined herein, he does not meet those standards. This motion will also be denied.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons fully explained above, Hardy's claims are procedurally defaulted, not cognizable in this proceeding, or are otherwise without merit under AEDPA standards. The court finds no basis to conclude that jurists of reason could debate the outcome of the petition or a reason to encourage Hardy to proceed further. Accordingly, the court declines to issue Hardy a certificate of appealability.

III.     CONCLUSION

For the reasons set forth above, the petition (ECF 2) is DENIED, and the

petitioner is DENIED a certificate of appealability. The petitioner's pending motions

(ECF 37, 38, 40) are DENIED. The clerk is DIRECTED to close this case.

SO ORDERED on July 9, 2020

_____/s/JON E. DEGUILIO_____
CHIEF JUDGE
UNITED STATES DISTRICT COURT